IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
TOPEKA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | Docket No. 5:15-cr-40030-001 |
| JOHN T. BOOKER, JR.,<br>    Defendant. | )<br>)<br>) | |

### Defendant's Motion For Reduction of Sentence

Defendant, John T. Booker, Jr, comes before this Honorable Court to reduce his sentence to time served, or whatever this Court deems appropriate, pursuant 18 U.S.C. § 3582(c)(1)(A).

## I. Procedural History

1. On Feb. 3, 2016, Defendant pled guilty pursuant a written 11(c)(1)(C) plea agreement to violations of 18 U.S.C. § 2332A(a)(2)(D) and 18 U.S.C. § 844(f)(1). Defendant was sentenced on July 24, 2017 to a term of 360 months' incarceration. Defendant is currently housed at FCI Memphis, a low-security institution.

## II. Exhaustion of Administrative Remedy

2. Defendant requested Reduction In Sentence through Warden Harrison on Apr. 21, 2026. More than 30 days have passed with no response, and so this matter is ripe for adjudication. See Exhibit 1.

## III. Extraordinary and Compelling Reasons

3. Defendant has served more than 10 years of a grossly disparate sentence, for which a similar situated Defendant would face a far lesser sentence compared to modern sentencing trends for youthful offenders in similar contexts. This qualifies for reduction pursuant U.S.S.G. § 1B1.13(b)(6).

4. Defendant stood before this Court and Judge Murguia as a result of being

1

a radicalized 20 year old man, the product of an undeveloped prefontal cortex (which made him uniquely susceptible to external manipulation), displaying youthful traits which feature impulsivity and lack of appreciation for long-term consequences, with myriad psychological concerns stemming from trauma he had not been able to handle.

5. Defendant returns to this Court as a very different man.  While the government will likely review the actions documented in his PSR and nature of the offense committed in 2015, the Defendant presents the results of more than a decade of growth and success of the correctional model of the FBOP.

6. Defendant asserts that "Compassionate release exists for the purpose of releasing incarcerated individuals when continued imprisonment no longer serves the goal of our justice system." United States v. Harper, No. 1:04-CR-00218-JPG  2025 WL1053547, at *1 (N.D. Ga. Mar. 11, 2024).  Defendant also believes that sentencing a defendant may be one of the most difficult decisions of a judge, and require a guess at what condemnation is right to balance a wrong done to society against the individual and their correction or rehabilitative need.  Defendant hopes that now this Court will have the benefit of a decade of hindsight to decide whether or not the wrong has been righted, and if the Defendant is successfully been rehabilitated.

## IV. Youthful Offender

7. Amendment 82**7** to the U.S.S.G. § 5H1.1 changed the guidance on youthful offenders.  It now states, "A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships.  In addition, youthful individuals

2

generally are more impulsive, risk seeking, and susceptible to outside influences as their brains continue to develop into young adulthood.  Youthful offenders are also more amenable to rehabilitation."

8. "Juveniles' susceptibility to immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult.'"  Thompson v. Oklahoma, 108 S. Ct. 2687 (1988).  Their own vulnerability and comparative lack of control over their immediate surroundings means juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment.  See Stanford, supra, at 395, 109 S. Ct. 2969 (1989).  The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character."  Roper v. Simmons, 125 S. Ct. 1183, at *12 (Mar. 1, 2005).

9. Defendant asserts further that scientific consensus cited by the Supreme Court further has supported diminished culpability for youthful offenders.  "Our decision rested not only on commonsense – on what 'any parent knows' – but on science and social science as well.  Id. at 569, 125 S. Ct. 1183, 161 L. Ed. 2d 1.  In Roper, we cited studies sharing that '[o]nly a relatively small proportion of adolescents' who engage in illegal activity "develop entrenched patterns of problematic behavior.'"  Id. at 570, 125 S. Ct. 1183, 161 L. Ed. 1 (quoting Steinberg & Scott, Less Guilty by Reason of Adolescence, Developmental immaturity, Diminished Responsibility, and the Juvenile Death Penalty, 58 Am. Psychologist 1009, 1014 (2003)).  And in Graham we noted that 'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds – for example, in "parts of the brain involved in behavior control."  560 U.S., at

--, 130 S. Ct. 2011, 176 L. Ed. 2d 825.  We reasoned that those findings-of

transient rashness, proclivity for risk, and inability to assess consequences-

both lessened a child's "moral culpability and enhanced the prospect that, as

the years go by and neurological development occurs, his 'deficiencies will

be reformed.'"  Id. at --, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (quoting Roper,

543 U.S., at 570, 125 S. Ct. 1183, 161 L. Ed. 2d 1)."  Miller v. Alabama,

S. Ct. 2455, at 418, 419 (June 25, 2012).  The Supreme Court went on to state

in Miller that "For the same reason, rehabilitation could not justify the

sentence.  Life without parole 'forswears altogether the rehabilitative

ideal: It reflects 'an irrevocable judgment about [an offender's] value and

place in society, at odds with a child's capacity for change.'"  Id. at *419,

420 (internal citations omitted).

10. The Supreme Court further held that such decisions regarding youthful

offenders must be deemed retroactive.  "There are instances in which a

substantive change in law must be attended by a procedure that enables a

prisoner to show that he falls within the category of persons whom the law may

no longer punish.  Some rules may have both procedural and substantive

ramifications.  For example, when an element of a criminal offense is deemed

unconstitutional, a prisoner convicted under that offense receives a new

trial where the government must prove the prisoner's conduct still fits within

the modified definition of that crime.  In a similar vein, when the

Constitution prohibits a particular form of punishment for a class of

persons, an affected prisoner receives a procedure through which he can show

that he belongs to a protected class.  Montgomery v. Louisiana, 577 U.S. 190

(Jan. 25, 2016).

## V. Evolving Court Rulings

11. Various courts dealing with radicalized youths and terrorism related

4

cases have been applying these philosophies and sentencing defendants to dramatically lower terms of incarceration.

12. In United States v. Mateo-Ventura, No. 1:23-cr-10271 (D. Ma. 2026), the court rejected categorical approaches to sentencing enhancements.  This resulted in a sentence of 50 months' incarceration for material support.  Defendant's 30 year stipulated sentence relied largely on enhancements, even including designating a 0 criminal history point offender to be enhanced to Criminal History Category VI.

13. The internet has created a sort of virtual caliphate that targets the psychologically vulnerable, particularly young men whose cognitive development makes them easily persuaded by extremist narratives.  In a critical comparison case, United States v. Kareem Nasr, No. 1:24-cr-00019 (S.D. N.Y. 2025), the 23 year old defendant was treated with a focus on his youth and the easily persuaded nature of his radicalization.  Nasr was sentenced to 60 months' incarceration for his material support charge, a sentence that is wildly disparate from Defendant's 30 year sentence.

14. The United States Sentencing Commission has been increasingly focused on the vulnerability of the defendant, and pressure from close relationships, going so far as to propose these as mitigating factors justifying sentence reductions in the proposed amendments to U.S.S.G. § 2B1.1(b)(3).

## VI. Offense Conduct

15. The government may assert, and would be correct in doing so, that Defendant was not charged with material support, but rather the attempted use of weapons of mass destruction.  The government would also be correct if they asserted that this process of the attempted act was over a lengthy period of time while undercover agents assisted and observed the Defendant, and after Defendant had declared terroristic goals on Facebook posts.  Defendant poses a

rhetorical question to any reader of this motion: Do you recall any act, statment, or belief from your young adult years that you regret, are ashamed of, or even perhaps that you count yourself lucky that said event did not go horribly wrong?  Defendant, now with the benefit of hindsight is very glad that he was with undercover agents.  Defendant has spent the last several years staring into the mirror and being thankful that he failed at what he thought he wanted to do.

16. As a result of the actions of the government's agents and their operation, Defendant's conduct never became more than an attempted crime.  Defendant never harmed any person, and is alive today to grow, to learn and to change for the better.

17. Even in sentencing, when Defendant was able to give a statement, he chose to assert sovereign citizen ideology, as documented in ECF Doc. 87 at *13-16. Defendant acknowledges the patience and restraint shown by this Court, and deeply regrets the squandered chance he had to truly accept responsibility.

18. Defendant was the product of severe psychological disorders (detailed in ECF doc. #71 at *18-20), abuse at the hands of his mother that his father was unaware of until years later, and a struggle to find identity and self worth. Defendant was a perfect target for aforementioned "virtual caliphate."

## VII. Rehabilitation

19. Defendant has spent more than a decade in the custody of the BOP. Defendant was surrounded by the worst and best of society.  Defendant has grown into adulthood away from the internet, from excuses, and from places to hide from ones own actions.  Defendant went through many of the struggles anyone unimprisoned might, and he had support of some benevolent staff and inmates to do so.

20. Defendant is no longer a supporter of radical Islam.  Defendant no

6

longer even practices or believes the religion of Islam.  Defendant largely does not conduct his life with strict adherence to any religion or dogma.

21. Defendant has reduced his security custody from Medium to Minimum a drop of two levels.  Defendant would be housed at a Federal Prison Camp if not for his Public Safety Factors.  Defendant has been evaluated as a Low Risk for recidivism according to the BOP's PATTERN system.

22. Defendant has had remarkably clear conduct over the course of his incarceration.  Despite his prediction that he would have to "Scrap like a rhino even to get past the chow hall," ECF doc. 87 at *27, Defendant has been entirely nonviolent and shown excellent overall compliance with institution rules and regulations.  Defendant has had few disciplinary infractions related to a mental health crisis, which was addressed by Psychology.

23. Defendant has been working closely with Psychology services and has been lowered to Mental Health Care Level 1 by Dr. Watson.  See Exhibit 2.

24. Defendant has completed myriad programs and maintained positive employment in positions of trust and responsibility.  He has worked as both Lieutenant's orderly, and now Captain's detail.  His work in landscaping has taught employable skills as well as kindled a love for beautifying his surroundings.  See certificates attached and incorporated herein as Exhibit 3.

25. Defendant is rehabilitated and poses no threat to any person or the community.  The government's agent, the BOP, has conducted a thorough investigation of his Reduction In Sentence Request pursuant U.S. Dep't of Justice, Fed. Bureau of Prisons PS No: 5050.50, Compassionate Release/ Reduction in Sentence (Jan. 17, 2019), including his assertion of rehabilitation. The overall factor in the BOP's evaluation is whether an inmate's "release would pose a danger to the safety of any other person or the community."  Id.

7

at *5 and 12. The BOP's investigation has yielded no evidence to refute Defendant's claim.

## VIII. Release Plan

26. If released, Defendant will be returning to 5512 SW Avalon Ln., Topeka, KS, 66604. He will be living with his father, John T. Booker, Sr.

27. Mr. Booker Sr. is a decorated combat veteran of Operation's Desert Storm. Mr. Booker Sr. has written this Court concerning this issue which is attached and incorporated herein as Exhibit 4. Mr. Booker Sr. was horrified at the conduct Defendant committed, but has stood by the Defendant through the years and through the rehabilitative process. Mr. Booker Sr. is well qualified to support his son, the Defendant, in his continued rejection of radical ideology and his successful integration into society.

28. Defendant will continue to utilize professional counselling services to ensure his mental health. He wishes to use his professional skills in landscaping to beautify homes, parks, and communities. He also wishes to work in peer counselling, potentially even in the BOP if possible, to help others to reject criminal thinking errors and be productive, respectable citizens.

## IX. Sentencing Factor Analysis

29. Defendant has served greater than 10 years of his sentence and has displayed no violence or threat to any other person. His compliance with BOP regulations, efforts to improve his facilities, and proactive rehabilitative efforts have promoted respect for the law. This satisfies 18 U.S.C. § 3553(a)(2)(A).

30. A sentence of time served is adequate deterrence under 18 U.S.C. § 3553(a)(2)(B). Defendant not only rejects violence, but has entirely recanted

8

his radical ideology and the Islamic faith.  Defendant will obey the laws of the United States just as he obeys the rules of the BOP.

31. Defendant is rehabilitated and poses no danger to any person or the community.  Defendant is minimum security classification and a Low Risk of Recidivism.  Defendant is an opponent of the radicalization that victimized him into attempting to victimize others.  This satisfies 18 U.S.C. § 3553(a)(2)(C).

32. Defendant has actively pursued, completed and used programs, counselling, and support to change from the youth this Court sentenced in 2017, into the man he is in 2026.  This satisfies 18 U.S.C. § 3553(a)(2)(D).

33. On June 13, 2019, during discussion of the recently signed First Step Act, President Donald J. Trump stated, "America wins when citizens with a criminal record can contribute to their communities as law-abiding members of our society."  Defendant, who was once acting as a criminal and enemy of the counrty, now has aligned himself as a proud man, happy to serve his community and it's laws.  His release will serve the interests of Justice under 18 U.S.C. § 3553(a)(6).

## X. Conclusion

For the reasons stated above, Defendant MOVES this Honorable Court, to view the change of a vulnerable and impulsive youth into a responsible man, and reduce his sentence to Time Served, or whatever this Court deems appropriate.

Respectfully submitted on this 21 day of May, 2026, in Shelby County, Tennessee,

John T. Booker, Jr. #25124031
FCI Memphis
P.O. Box 34550
Memphis,TN 38184

9

John Thomas Booker Jr
Inmate Number: 25124...
Federal Correctional Insti...
P.O. Box 34550
Memphis, TN 38184-0550

9589 0710 5270 1814 9233 15

United States District Court
For The District of Kansas
Office of the Clerk
4144 SE Quincy St.
U.S. Courthouse
Room 490
Topeka, KS 66683-0000

RECEIVED

JUN 08 2026

CLERK U.S. DIST. COURT
TOPEKA, KANSAS

Retail

66683

U.S. POSTAGE PAID
FCM LG ENV
MEMPHIS, TN 38134
JUN 04, 2026

$0.00
S2324E500348-12

RDC 99

✦Special Mail✦